N. KELLY HOANG LAW FIRM
N. KELLY HOANG, ESQ. (CA Bar No. 195816)
Plaza Tower
600 Anton Blvd., 11th Floor
Costa Mesa, CA 92626
Telephone: (714) 545-1016
Facsimile: (714) 545-5048
Email: kellyhoanglaw@sbcglobal.net

Self-Representing Attorney for Plaintiff

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| N. KELLY HOANG LAW FIRM and NGUYEN-HONG KELLY HOANG a.k.a. N. KELLY HOANG,<br><br>    Plaintiff,<br><br>vs.<br><br>MINH QUANG HOANG and DOES 1 through 20, inclusive,<br><br>    Defendants.<br><hr>MINH QUANG HOANG,<br><br>    Counterclaimant,<br><br>vs.<br><br>N. KELLY HOANG LAW FIRM and NGUYEN-HONG KELLY HOANG a.k.a. N. KELLY HOANG,<br><br>    Counterdefendant | CASE NO.  8:21-cv-02051-JLS-DFM<br><br>**PLAINTIFF/COUNTER-DEFENDANT N. KELLY HOANG LAW FIRM'S RESPONSE BRIEF TO SUPPLEMENTAL DECLARATION OF ATTORNEY MARK FLEMING IN SUPPORT OF DEFENDANT/COUNTER CLAIMANT'S MINH QUANG HOANG'S MOTION TO COMPEL RESPONSES TO REQUEST FOR PRODUCTION OF DOCUMENTS AND FOR SANCTIONS**<br><br>Judge:<br>Honorable Douglas F. McCormick<br><br>Date: April 25, 2023<br>time: 11:00 a.m.<br>Location: Courtroom 6B, 6th Floor |

Pursuant to the Magistrate Court Judge's Order dated March 23, 2023, Plaintiffs N. Kelly Hoang Law Firm et al. (hereinafter, "Plaintiffs") hereby submit this Response Brief to the Supplemental Declaration of Attorney Mark Fleming in

Support of Defendant/Counter-Claimant Minh Quang Hoang's (hereinafter, "Minh Hoang") Motion to Compel Responses to Request for Production of Documents and for Sanctions.   This Response Brief is comprised of the attached Memorandum of Points and Authorities and the Declaration of N. Kelly Hoang.

                                        Respectfully submitted,

Dated: April 18, 2023                   **N. KELLY HOANG LAW FIRM**


                                        By:_____
                                        N. Kelly Hoang, Esq.
                                        Self-Representing Attorney for Plaintiff

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  LEGAL ARGUMENT

In a recent U.S. Supreme Court case, Goodyear Tire & Rubber Co. v. Haeger, the U.S. Supreme Court set important limits on inherent authority sanctions which endowed courts with more discretion and wider latitude than rule-based sanctions such as monetary sanctions delineated under F.R.C.P §37.  137 S.Ct. 1178 (2017).  In the Goodyear case, the U.S. Supreme Court ruled that a court's sanction under its inherent authority must be calibrated to the damages directly caused by the sanctioned conduct.  Id. at 1182.  The U.S. Supreme Court ruled that fee awards are compensatory sanctions, and if an award extends beyond direct compensation solely for the damages caused by the conduct, this crosses the boundary from compensation to punishment.  Id.  If a court seeks to impose punitive sanctions, the defendant is owed a heightened due process protection such as those afforded in criminal proceedings, including a higher standard of proof.  Id.

In line with the Goodyear case, rule-based sanctions, such as sanctions under F.R.C. P. § 37, have undergone recent amendments to curb the potential that discovery sanctions would distort litigation outcomes.  For instance, in 2015, a change was made to Rule 37(e) permitting sanctions only when there is prejudice to another party, and the financial sanction must be no greater than necessary to cure the prejudice.

Beyond the requirement that fee awards be strictly compensatory and directly calibrated to the conduct, F.R.C.P. § 37 requires that monetary sanctions cover only "reasonable expenses."

Federal Courts have reduced the amount of attorney's fees claimed to ensure that the sanction amount is both "reasonable and equitable."

An attorney fee award imposed on sanction should not pay for excessive time spent on a matter or for time spent on activities not necessary to the litigation. Moline v. Trans Union, L.L.C., 222 F.R.D. 346 (N.D. Illinois 2004); Szopa v.

United States, 460 F.3d 884, 886 (7th Cir. 2006).  Counsel must correlate their response, in terms of hours and funds expended, to the merit of the claims. Dubisky v. Owens, 849 F.2d 1034, 1037 (7th Cir. 1988).

The court must also consider whether the moving party adequately exercised its duty of mitigation and adequately mitigated its own legal costs.  A duty of mitigation exists and a district court should ensure that the party requesting fees has not needlessly protracted the litigation or needlessly incurred costs.  Pollution Control Indus. Of America, Inc. v. Van Gundy, 21 F.3d 152, 156 (7th Cir. 1994); Dubisky, 849 F.2d at 1037.

Equitable considerations also warrant the reduction of attorney's fees awarded as a sanction.  One equitable consideration is the sanctioned attorney's inability to pay.  It lies well within the district court's discretion to temper the amount to be awarded against an offending attorney by balancing his/her ability to pay.  Oliveri v. Thompson, 803 F.2d 1265, 1281 (6th Cir. 1986), Munson v. Friske, 754 F.2d 683, 687 (7th Cir. 1985), Arnold v. Burger King Corp. 719 F.2d 63, 68 (4th Cir. 1983), Durrett v. Jenkins Brickyar, Inc., 678 F.2d 911, 916-17 (11th Cir. 1982), Faraci v. Hikey-Freeman Co., 607 F. 2d 1025, 1028 (2d Cir. 1979).   In the Moline case, the District Court reduced the sanction award reasoning that a larger award would deter the sanctioned party, a consumer law firm, from pursuing consumer claims in the future.  Moline, 222 F.R.D. at 352.   An equitable fee award imposes the least severe sanction that is adequate to serve the purpose of the rule.  Id. at 351; Anderson v. County of Montgomery, 111 F.3d 494, 502 (7th Cir. 1997).

To be sure, equitable considerations are built into F.R.C.P. § 37 which excepts sanctions and the payment of movant's reasonable expenses when "other circumstances make the award of expenses unjust" and when the opposing party's nondisclosure or response was "substantially justified."

These legal limits and legal requirements for sanctions were designed to safeguard against "litigation by discovery sanctions." In "litigation by discovery sanctions," lawyers leverage discovery requests against the producing party to trigger sanctions. They inundate courts with motions to compel and motions for sanctions to gain an advantage in the litigation and potentially gain from the payment of sanction awards.

In this case, counsel for Minh Hoang filed an additional motion for sanctions on April 4, 2023, (Dkt. No. 36) requesting increasingly severe discovery sanctions including terminating sanctions, evidentiary sanctions barring introduction of all evidence, and additional monetary sanctions. On April 14, 2023, the Court denied Minh Hoang's second motion for sanctions (Dkt. No. 36) in-full and vacated the hearing, stating that an award of expenses pursuant to the second motion for sanctions would be unjust.

District Court Judge Josephine Staton's Civil Trial Order (Dkt. No. 21) states on page two, lines 22-23, that "Whenever possible, the Court expects counsel to resolve discovery problems among themselves in a courteous, reasonable, and professional manner." As detailed below, after attorney N. Kelly Hoang informed Minh Hoang's counsel that she was dealing with a family medical emergency, namely her mother's spinal injury, Minh Hoang's counsel refused to extend any professional courtesy and filed successive motions for sanctions against Plaintiffs requesting sanctions in increasing severity.

## II. CONSIDERATION OF EQUITY, JUSTICE, AND SUBSTANTIAL JUSTIFICATION

In the imposition and the calculation of monetary sanctions under F.R.C.P. § 37, courts must consider equity, justice, and substantial justification. The following facts are provided for the court to consider equity, justice, and substantial justification in the imposition of monetary sanctions in this case.

1. **<u>Solo Practitioner and Ability to Pay</u>** - N. Kelly Hoang is a solo practitioner, and as with other solo practitioners, she experiences the difficulties and challenges that only solo practitioners face. (Decl. of N. Kelly Hoang, ¶1). Solo practitioners do not have the advantages that large or boutique law firms possess. Solo practitioners do not have large support staff, fellow attorneys who automatically for cover them at a moment's notice, and large asset bases to withstand economic loss. Like other solo practitioners, N. Kelly Hoang does not possess unlimited support staff, fellow attorneys to cover for her at a moment's notice, nor a large asset base. (Decl. of N. Kelly Hoang, ¶2).

N. Kelly Hoang filed this lawsuit to recovery payment for almost four and a half years' worth of work which led to Minh Hoang's acquittal on all counts in his criminal cases. In his deposition, Minh Hoang admitted to hiring his second-cousin, N. Kelly Hoang, to "assemble his defense team" and admitted that he <u>never</u> terminated her legal services nor asked her to cease her services throughout the over four and a half years in which he was aware that she was representing him and rendering legal services. (Decl. of N. Kelly Hoang, ¶3).

As a solo practitioner, the loss of four and a half years' worth of income is devastating. To have to pay Minh Hoang's attorney's fees when he has refused to pay N. Kelly Hoang for over four and a half years' worth of legal work is unjust. N. Kelly Hoang had to continue this contentious lawsuit to recover fees and, as a result, must expend more unpaid time and expenses in this case. (Decl. of N. Kelly Hoang, ¶4). The economic loss runs concurrent with her work on a contingency fee case, and as a result, N. Kelly Hoang has had extremely low income from her practice for approximately three years. (Decl. of N. Kelly Hoang, ¶5). This drastically impacts equitable considerations and the consideration of ability to pay.

Since solo practitioners also do not have co-counsel who can take over at a moment's notice, they are particularly vulnerable when unexpected medical emergencies arise. Counsel for Minh Hoang was aware that N. Kelly Hoang was a

solo practitioner with no co-counsel. (Decl. of N. Kelly Hoang, ¶6). N. Kelly Hoang was in the midst of a family medical emergency, and intended to schedule a meet and confer with opposing counsel. (Decl. of N. Kelly Hoang, ¶7). While not specifically required to send a follow-up email, a follow-up email from counsel for Minh Hoang would have mitigated costs. In addition, a follow-up email would have complied with Judge Staton's Civil Trial Order which states that she expects the parties to resolve discovery problems among themselves whenever possible through courtesy, reasonableness, and professionalism.

Unlike large firms and boutique firms, solo practitioners do not have support staff to delegate their work. Thus, much of the tasks, from legal work, to collection, to rounding up documents, falls on the solo practitioner. This is the case with N. Kelly Hoang. (Decl. of N. Kelly Hoang, ¶8). N. Kelly Hoang asked Minh Hoang's counsel for accommodation for the unexpected family emergency, but opposing counsel refused to grant any accommodation for deadlines or for continuances, and instead filed repeated motions for sanctions. (Decl. of N. Kelly Hoang, ¶9).

2. **Unexpected Family Medical Emergency** – N. Kelly Hoang's eighty-four-year-old mother suffered a severe spinal injury making her unable to walk. (Decl. of N. Kelly Hoang, ¶10). The orthopedic surgeon advised N. Kelly Hoang, who is her mother's primary caregiver, to get post-operative tests and schedule the surgery as soon as possible, or risk permanent disability. (Decl. of N. Kelly Hoang, ¶11). After informing Minh Hoang's counsel that N. Kelly Hoang was experiencing an unexpected family medical emergency, she asked Minh Hoang's counsel for accommodation in discovery deadlines and a continuance of the case. (Decl. of N. Kelly Hoang, ¶12). Minh Hoang's counsel refused any accommodation on deadlines and instead filed successive motions for sanctions against Plaintiffs. (Decl. of N. Kelly Hoang, ¶13). Not only was this inconsistent with Judge Staton's Civil Trial Order which expected courtesy, reasonableness,

and professionalism in resolving discovery issues, but it further consumed N. Kelly Hoang's time. Not only did she have to produce discovery, work her cases, and attend to her unexpected family emergency, her time was further consumed by having to defend against repeated motions for sanctions. (Decl. of N. Kelly Hoang, ¶14).

3. **<u>Protective Order in Minh Hoang's Criminal Cases</u>** - N. Kelly Hoang informed Minh Hoang's counsel about the protective order covering information and documents from his two criminal cases. (Decl. of N. Kelly Hoang, ¶15). That protective order covers the information and documents requested by Minh Hoang's counsel in their Requests for Production of Documents. (Decl. of N. Kelly Hoang, ¶16). N. Kelly Hoang had particular concern over disclosure of documents and information covered by the protective order. (Decl. of N. Kelly Hoang, ¶17). The protective order, which is attached to the (Decl. of N. Kelly Hoang, Exhibit A), states the following on pages three and four:

 a. The Defense shall use Confidential Materials solely and exclusively in connection with this case (including but not limited to investigation, trial preparation, trial, and appeal) and not for any commercial or other purpose.

 b. The Defendant [Minh Hoang] may access and view Confidential Materials solely in the offices of defense counsel or an authorized defense investigator and under the supervision and control of defense counsel or a staff member or investigator who is authorized to access Confidential Materials.

 e. In no event shall Confidential Materials be disclosed to any other person or entity other than the United States, BD, the Defense, or this court, except as authorized by this Protective Order. Should the Defense need to disclose or describe any Confidential Materials to the court, it must do so under seal. **Should the Defense need to disclose or describe any Confidential Materials to any other court or during any other legal proceeding, it must do so only after giving notice to the Government and obtaining permission from this court.**

Pursuant to the protective order, permission must be obtained from the Utah Federal District Court to disclose the protected documents and notice must be given to the U.S. Attorney's Office in Utah. Furthermore, Defendant Minh Hoang

may only access the protected material under the supervision and control of approved counsel. N. Kelly Hoang informed Minh Hoang's counsel about the protective order in the Utah criminal case and provided his counsel with a copy of the protective order. (Decl. of N. Kelly Hoang, ¶18). Minh Hoang's counsel offered no response whatsoever and proceeded to file repeated motions for sanctions against Plaintiffs. (Decl. of N. Kelly Hoang, ¶18). N. Kelly Hoang has substantial justification in her discovery response. Her request for a continuance was refused and she has been placed in the position of trying to ensure compliance with the protective order and avoiding sanctions for any delay in producing discovery which includes protected information and protected documents.

### III. EXPENSE ESTIMATES ARE EXCESSIVE AND INCLUDE UNNECESSARY EXPENSES

The expense estimates listed by counsel for Minh Hoang were all submitted via declarations from Mark Fleming. No declarations were submitted from Christina Bernstein. Instead, Mark Fleming made declarations on behalf of Christina Bernstein, which is impermissible. Furthermore, the declarations of Mark Fleming included impermissible hearsay, lack of detail, and lack of foundation.

**1. Motion to Compel Filed on February 17, 2023 (Dkt. No. 30)**

No declaration was submitted from Christina Bernstein. Instead, Mark Fleming impermissibly made a declaration on behalf of Christina Bernstein, claiming that she spent 16 hours drafting this motion to compel. The 16- hour claim in Mark Fleming's declaration contains no detail. Moreover, 16 hours is an excessive claim for this Motion to Compel.

This is a garden variety motion to compel with no novel issues and no legal complexity. It is a nine-and-a-half-page memorandum of points and authorities in 14-point font that included roughly four pages of recitation of facts, four pages of

copy-and-paste of emails, and only two pages of brief boilerplate legal discussion. Only five court cases were cited for basic propositions, and portions of the Federal Rules and Local Rules were copied and pasted into the legal discussion.

It is possible to delegate the drafting of the eight pages of recitation of facts and four pages of copy and paste of emails to associates or paralegals. The firm in which Ms. Bernstein is of-counsel, Garcia Hong Law, employs associates.

In any event, a motion of that nature should take, at most, 4-5 hours to prepare and file. Sixteen hours is excessive.

**2. Hours Claimed by Mark Fleming in Reviewing and Revising Motion to Compel.**

Mark Fleming claims to have spent 1.2 hours reviewing and revising the Motion to Compel. It is permissible to review and revise the work of associates, however, having multiple attorneys of roughly equal seniority increases the cost unreasonably. Counsel has a duty to mitigate costs, and having two attorneys of roughly the same seniority duplicate work unreasonably increases the costs. This is a garden variety motion to compel with no novel issues and no legal complexity that does not require work from two attorneys of the same seniority.

A motion of this nature should take, at most, in total, 4-5 hours for one attorney to prepare and file.

**3. Hours Claimed by Mark Fleming for Attempting to Meet and Confer**

Mark Fleming previously claimed in the Motion to Compel that he spent hours attempting to meet and confer with N. Kelly Hoang regarding the Motion to Compel. This claim was inflated since Mr. Fleming sent one email in his attempt to meet and confer and never met and conferred with N. Kelly Hoang. In the March 21, 2023, hearing, Magistrate Court Judge Douglas F. McCormick stated to Mr. Fleming that he would not allow any claim of expense for meet and confer.

**4. Notice of Non-Opposition Filed on March 1, 2023 (Dkt. No. 31)**

No declaration was submitted from Christina Bernstein. Instead, Mark Fleming impermissibly made a declaration on behalf of Christina Bernstein, claiming that she spent 1.2 hours researching and drafting this Notice of Non-Opposition. First, this claim is inflated since the document consists of roughly a half page of copied and paste rules regarding the deadline for Plaintiffs' opposition. At most, this half page document should take 20 minutes; but more importantly, this Notice of Non-Opposition is completely legally unnecessary. Since this Notice of Non-Opposition is unnecessary, there is no direct causal link with the discovery conduct. Moreover, counsel have a duty to mitigate costs and avoid unnecessary tasks. Counsel should not be able to claim this pleading as an expense since it was legally unnecessary to file this pleading.

**5. March 21, 2023 Hearing Before Magistrate Court Judge McCormick**

N. Kelly Hoang timed the March 21, 2023, hearing on a timer which indicated that the hearing lasted 20 minutes (Decl. of N. Kelly Hoang ¶19). The Court gave both parties the option of appearing by telephone and Ms. Bernstein appeared telephonically. Mr. Fleming, however, despite the Court's offer to appear telephonically, drove from San Diego and is attempting to claim 4.2 hours as expense for traveling to the hearing, preparing for the hearing, and attending the hearing.

Counsel has a duty to mitigate costs, and when the Court gives the party the opportunity to appear telephonically, the duty to mitigate costs demands that they claim no more than actual time for the hearing. In fact, Magistrate Court Judge McCormick commented to both parties that they should take advantage of that option. To that end, any claim of expenses should be for 20 minutes for the hearing, and perhaps 10-15 minutes to read the Motion to Compel to prepare for the hearing. For Minh Hoang's counsel, the hearing was strictly factual and involved no legal complexity.

## IV. REQUEST FOR SETTLEMENT CONFERENCE BEFORE MAGISTRATE COURT JUDGE MCCORMICK

Counsel for Minh Hoang has refused to stipulate to continue the trial date leaving less than a month and a half before the settlement proceeding cut-off date of June 2, 2023. Due to the level of contentiousness in this case with repeated motions for sanctions and the lack of meaningful settlement of the case, N. Kelly Hoang sent an email to Nancy Boehme, Courtroom Deputy for Magistrate Court Judge McCormick, inquiring whether the parties in this case can have a settlement conference with Judge McCormick even though the parties have a court appointed mediator, Mr. Robert W. Mockler. (Decl. of N. Kelly Hoang, ¶20). Ms. Boehme responded via email that Judge McCormick would be glad to have a settlement conference for this case provided that both parties agree that (1) using a Magistrate Judge would be helpful and (2) Judge McCormick should be that Magistrate Judge. Plaintiffs would like to have a settlement conference before Judge McCormick and Plaintiffs believe that Judge McCormick would be very helpful in a case such as this case. (Decl. of N. Kelly Hoang, ¶21). N. Kelly Hoang subsequently spoke to mediator Robert Mockler via telephone and Mr. Mockler stated that he has no objection to the parties having a settlement conference before Judge McCormick. (Decl. of N. Kelly Hoang, ¶22). The parties have not had, nor have they scheduled any settlement proceedings before Mr. Mockler. (Decl. of N. Kelly Hoang, ¶23).

Plaintiffs believe that Judge McCormick would be very helpful in facilitating resolution of this contentious case which will invariably save court and party resources. Plaintiffs will inquire with Counsel for Minh Hoang to seek their position.

For the reasons set forth herein and in the moving papers, Plaintiffs respectfully request that the Court consider reducing or eliminating the discovery monetary sanctions.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: April 18, 2023 | **N. KELLY HOANG LAW FIRM** |
|  | By:_____ <br> N. Kelly Hoang, Esq. <br> Self-Representing Attorney for Plaintiff |